

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Paul A. Riley*                *Mailing Address:*              *Office Location:*              DIRECT: 410-209-4959
*Assistant United States Attorney*   *36 S. Charles Street, 4th Floor*   *36 S. Charles Street, 4th Floor*    MAIN: 410-209-4800
*Paul.Riley@usdoj.gov*         *Baltimore, MD 21201*            *Baltimore, MD 21201*            FAX: 410-962-0693
JTM 10.20.21

October 20, 2021

Katherine Tang Newberger, Esq.
First Assistant Federal Public Defender
100 S. Charles Street
Tower 2, 9th Floor
Baltimore, Maryland 21201

      Re:    <u>United States v. Charles Hand</u>,
             Criminal No. RDB-21-00066

Dear Counsel:

      This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Charles Hand (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by October 29, 2021, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offenses of Conviction</u>

      1.     The Defendant agrees to plead guilty to Count 1 of the Superseding Information, which charges the Defendant with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

<u>Elements of the Offense (Distribution of Child Pornography)</u>

      2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the dates specified in Count 1 of the Superseding Information, in the District of Maryland, the Defendant

          a.     First, knowingly distributed a visual depiction;

          b.     Second, that the visual depiction was transported in or affecting interstate or foreign commerce or the visual depiction was produced using materials that had been transported in or affecting interstate or foreign commerce;

          c.     Third, that the visual depiction was child pornography; and

d. Fourth, that the defendant knew of the sexually explicit nature of the material and that the visual depiction was of an actual minor engaged in that sexually explicit conduct; and

Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Min. Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2252A(a)(2) | 5 years | 20 years | Life | $250,000 | $100, $5,000 (18 U.S.C. § 3014) |

    a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c. Special Assessments: The Court must order the Defendant to pay a special assessment pursuant to 18 U.S.C. § 3013 and may order additional special assessments for certain convictions pursuant to 18 U.S.C. §§ 3014 and 2259A.

    d. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664, and 2259.

    e. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    f. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

    g. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a

schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Offender Registration

4. The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

5. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

   a. The Defendant has the right to have the charge in the Superseding Information presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Superseding Information, he is giving up that right, and understands that the charge in the Superseding Information will be filed by the United States Attorney without the Grand Jury.

   b. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

   c. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        d.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

        e.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

        f.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        g.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

        h.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        i.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

Rev. August 2018

4

6.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

7.  This Office and the Defendant stipulate and agree to the Stipulation of Facts set forth in Attachment A, which is incorporated by reference herein. Furthermore, this Office and the Defendant agree that the Statement of Facts establishes the commission of additional offenses by the Defendant that shall be treated as if the Defendant had been convicted of additional counts charging those offenses.

    a.  This Office and the Defendant agree the base offense level is 22 pursuant to U.S.S.G. § 2G2.2(a).

    b.  This Office and the Defendant further agree that pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the material involved a prepubescent minor or a minor who had not attained the age of 12 years (subtotal: 24).

    c.  This Office and the Defendant further agree that pursuant to U.S.S.G. § 2G2.2(b)(3)(B), there is a five (5) level increase because the Defendant knowingly engaged in distribution for any valuable consideration (subtotal: 29).

    d.  This Office and the Defendant further agree that pursuant to U.S.S.G. § 2G2.2(b)(4), there is a four (4) level increase because the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) sexual abuse or exploitation of an infant or toddler (subtotal: 33).

    e.  This Office and the Defendant further agree that pursuant to U.S.S.G. § 2G2.2(b)(6), there is a two (2) level increase because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material (subtotal: 35).

    f.  This Office and the Defendant further agree that pursuant to U.S.S.G. § 2G2.2(b)(7)(C), there is a five (5) level increase because the offense involved 600 or more images (subtotal: 40).

    g.  This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's acceptance of personal responsibility for the Defendant's conduct. This Office may oppose any adjustment for

acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

      h. Accordingly, the adjusted base offense level is **37**.

8. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

9. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

10. At the time of sentencing, subject to paragraph 11 below, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Information. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Rule 11 (c) (1) (C) Plea

11. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of between **120 months' imprisonment and 240 months' imprisonment** in the custody of the Bureau of Prisons is the appropriate disposition of in this matter taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). This Agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw the Defendant's plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set

forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw the Defendant's plea.

### Waiver of Appeal

12. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows:

        i. The Defendant reserves the right to appeal any sentence that exceeds the statutory maximum; and

        ii. This Office reserves the right to appeal any sentence below a statutory minimum.

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

13. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

14. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

      a. A MSI Laptop computer, S/N: K2005N0007676;

      b. A HP Compaq computer, S/N: MXL8200NW0; and

      c. A Canon Powershot Elph Digital Camera, S/N: 422050005746 containing a SanDisk MicroSD card.

    15. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

    16. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

    17. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

    18. Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, and 18 U.S.C. § 2259, the Defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the Defendant agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct. The Defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

    19. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum

obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Additional Special Assessments in Sex Crimes Cases

20. Pursuant to 18 U.S.C. § 3014 (the Justice for Victims of Trafficking Act "JVTA"), since the offense of conviction is under Chapter 77 (relating to peonage, slavery, and trafficking in persons), 109A (relating to sexual abuse), 110 (relating to sexual exploitation and other abuse of children), 117 (relating to transportation for illegal sexual activity and related crimes), or 274 (related to human smuggling), the Defendant must also pay an additional special assessment of **$5,000**, unless the Defendant is indigent.

21. Assessments in Child Pornography Cases: Pursuant to 18 U.S.C. § 2259A (the Amy, Vicky, and Andy Child Pornography Victim Assistance Act "AVAA"), in addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess- (1) not more than $17,000 on any person convicted of an offense under section 2252(a)(4) or 2252A(a)(5); (2) not more than $35,000 on any person convicted of any other offense for trafficking in child pornography; and (3) not more than $50,000 on any person convicted of a child pornography production offense.

## Defendant's Conduct Prior to Sentencing and Breach

22. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

23. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made

during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

24.   The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

[INTENTIONALLY LEFT BLANK]

## Entire Agreement

25.  This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Paul Riley
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/27/2021
Date

Charles Hand

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

10/27/21
Date

Katherine Tang Newberger, Esq.

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant, Charles Hand, born September 1953, is a resident of Aberdeen, Maryland. Hand served as a coder for an Internet-based child pornography website (the "Site") dedicated to the advertisement and distribution of child pornography and the discussion of matters regarding pedophilia and the sexual abuse of children.

Moreover, between October 2020 and December 2020, Hand repeatedly distributed child pornography files on the Site (which were downloaded by other users) and to an FBI undercover agent ("UC") during online chats. During the UC chats, Hand repeatedly discussed his sexual interest in children and his desire to sexually abuse them.

Hand likewise possessed an extensive collection of child pornography, more than 100,000 depictions total, including numerous videos and images of prepubescent minors and that depicted sadomasochistic conduct of prepubescent minors and bestiality.

Hand's offense is described in further detail below.

### Hand's Work In Connection With The Site



In 2020, Hand served as one of two primary coders in connection with the Site and was responsible for developing certain of its features: an internal email system that allowed users of the Site to send emails to each other and which facilitated communication among users; and an internal system that allowed users of the Site to report problems with the Site that Hand would go on to fix. He offered his services to the lead administrator of the Site and, as a result of the services he provided, was "promoted" and provided access to areas of the Site ~~(and the child pornography~~ ~~therein)~~ that was not available to all users.

### Hand's Distribution Of Child Pornography On The Site

In addition to serving as a coder on the Site, Hand repeatedly posted child pornography to various pages on the Site; this child pornography was available for download and in fact downloaded by other members of the Site, including an FBI UC. One of the pages on the Site to which Hand posted was not accessible to all users of the Site and, in order to keep access to the page, a user was required to post a certain number of child pornography files to the page, which Hand did.

For example, on October 2, 2020, Hand posted a video depicting a clothed, prepubescent female, estimated to be between three to five years of age, performing oral sex on fully erect adult penis. That same day, he posted a video depicting a clothed prepubescent female, estimated to be between three to five years of age, performing oral sex on and manually manipulating a fully erect adult penis. Both of these child pornography videos were downloaded by an FBI UC.

Rev. August 2018

On October 3, 2020, Hand posted a video depicting a fully nude adult male and a fully nude prepubescent girl, estimated to be between seven and 10 years of age, outside on a blanket engaging in multiple sexual acts. The girl manually manipulates the erect penis and the male penetrates the girl's vagina with his erect penis. The female spreads her legs at multiple points in the video, prominently exposing her vagina for the camera. This child pornography video was downloaded by an FBI UC

On November 4, 2020, Hand posted a video depicting a clothed prepubescent girl, estimated to be between four and eight years old, whose mouth is being penetrated by an adult penis and manipulating an adult's fully erect penis. The male ejaculates into the girl's mouth. This child pornography video was downloaded by an FBI UC.

On November 6, 2020, Hand posted a video depicting a fully nude prepubescent girl, estimated to be between three to seven years of age, whose mouth is being penetrated by an adult penis. This child pornography video was downloaded by an FBI UC.

### Hand's Chats With An FBI UC

In addition to posting child pornography files to the Site that were downloaded by others (including an FBI UC), Defendant also distributed child pornography to an FBI UC during online chats. For instance, on February 23, 2021, Hand sent the FBI UC multiple depictions of child pornography. He also repeatedly referenced his sexual interest in children—girls and boys—and his desire to sexually abuse them, and his past abuse of his stepdaughter, referenced further below. Moreover, during chats with the FBI UC, he also repeatedly referenced his work in connection with the Site.

### Execution Of Search Warrant At Defendant's Residence And Forensic Analysis Of Seized Devices

On March 3, 2021, law enforcement executed a federal search warrant at Hand's residence located at 456 Grasmere Lane in Aberdeen, Maryland and searched the residence. There they seized multiple electronic devices belonging to Defendant that each contained child pornography: an MSI Laptop computer, S/N: K2005N0007676; an HP Compaq computer, S/N: MXL8200NW0; and a Canon Powershot Elph Digital Camera, S/N: 422050005746 containing a SanDisk MicroSD card.

Each of these devices were manufactured outside of the District of Maryland. The Internet is a facility of interstate commerce.

Hand used the MSI Laptop and HP Compaq computers in connection with his coding on the Site and to download, upload, possess, and distribute child pornography. The HP computer in particular contained more than 108,000 depictions (images and videos) of child pornography, including numerous depictions of sadistic or masochistic conduct, including of prepubescent minors bound and in bondage, and bestiality involving prepubescent minors.

The computer also contained a folder containing over 9,000 records concerning a known victim of child pornography ("Tara") whose real identity has become known by individuals with

a sexual interest in children. That folder contained images of the victim being sexually abused, along with numerous articles and records about her, her parents, and other aspects of her life such as her participation in high school sports, non-pornographic photos of her taken from websites such as Instagram and Facebook through the years, and court records concerning her abuser—her father—and his federal prosecution.

The HP computer likewise contained a publication called the "Secret Guide to Sex With Children" which described how to have sex with children without getting caught. The computer also contained approximately 2,800 "stories" related to sexual activity with children, many of which were written from the perspective of a pedophile.

The computer likewise contained numerous artifacts concerning Hand's work on the Site, including source code from the Site and email correspondence with the primary administrator of the Site.

### Hand's Confession To Law Enforcement And His Online Statements Regarding His Stepdaughter

After voluntarily waiving his *Miranda* rights, Hand agreed to speak with investigators. He, among other things, admitted to (1) being sexually attracted to girls between the ages of seven and 12; (2) serving as a coder on the Site; (3) offering his coding services to the administrator of the Site; (4) viewing, collecting, and sharing child pornography; and (5) exposing himself to his 9 year old stepdaughter in Oregon more than 15 years earlier.

Law enforcement interviewed the child's mother. She informed them that in approximately 1995, Hand touched her then seven year old daughter's vagina during a family camping trip. When the child's mother confronted Hand, he stated that he made a mistake and thought that the child was actually her mother. The child's mother also told law enforcement that in 1999 or 2000, Hand and her daughter were watching a movie together and her daughter relayed to her that Hand "rubbed himself, something spewed and he licked his fingers." The child's mother kicked Hand out of the house after incident and ultimately divorced Hand. Hand pled guilty to a misdemeanor charge in connection with the offense, which was expunged on October 6, 2006.

During one of his online chats—one on February 24, 2021—with an FBI UC, Hand discussed his stepdaughter, getting "caught," and his divorce. He wrote:

- "I lived with a little girl. They know EXACTLY what they're doing."

- "She just learned so quickly what looks from her, what poses, turned me on. Her favorite thing to do was to dothings [sic] to turn me on when friends and family were in the room."

- "One time she came down stairs naked, with her panties stuffed in her crotch. She says 'What did I dowith [sic] my panties? Oh HERE they are' Pulled them out and put them on."

- "No. I got caught and thrown away."

- "It's SO hard living with a little girl allthe [sic] time, dealing with all the erections.

Rev. August 2018

14

- "I got caught 3 times. The 3rd time she threw me away. Put me on a plane to my relatives house."

- "Lost my job, my reputation in the town, basically started over. Then there's the divorce loses."

- "See? 70 years ago this wouldn't have been an issue. Hopefully not to long from now, it won't be an issue again." . . . .

- "I was convicted of misdemeanor and on probation for 5 years including SO registry and 'counceling' [sic] for 5 years." . . . .

- "I didn't really get all that much pedo sex out of the deal. I was always too timid to take it to the next step."

- "I've always regretted I didn't go farther. She was a very horny little girl."

Hand later told law enforcement that he thought that it was "absurd" that viewing child pornography was considered victimizing a child and that he did not see a difference between having 100 child pornography files or a thousand. He further stated that he had been waiting for 30 years for law enforcement to knock on his front door.

Defendant admits that he used a facility and means of interstate commerce (the Internet and the above-referenced computers) to knowingly distribute visual depictions of actual minors (including prepubescent minors) engaged in sexually explicit conduct.

SO STIPULATED:

_____
Paul Riley
Assistant United States Attorney

_____
Charles Hand
Defendant

_____
Katherine Tang Newberger, Esq.
Counsel for Defendant

Rev. August 2018

15